IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-484

Filed 17 December 2024

Stokes County, No. 22 JT 53

In re: M.R.B.

Appeal by Respondent-Mother from orders entered 30 January 2024 by Judge Marion M. Boone in Stokes County District Court. Heard in the Court of Appeals 6 November 2024.

> *Jennifer O. Michaud for Petitioner-Appellee Stokes County Department of Social Services.*
>
> *James N. Freeman, Jr., for Guardian ad Litem.*
>
> *Garron T. Michael for Respondent-Appellant Mother.*

HAMPSON, Judge.

**Factual and Procedural Background**

Respondent-Mother appeals from an Adjudication Order in Proceeding to Terminate Parental Rights adjudicating grounds to terminate her parental rights to her minor child, Megan[1], and a Disposition Order in Proceeding to Terminate Parental Rights concluding it was in the best interest of the minor child to terminate Respondent-Mother's parental rights in Megan. The Record before us reflects the

---

[1] We use a pseudonym to protect the identity of the minor child. *See* N.C. R. App. P. 42.

following:

On 31 May 2022, the Stokes County Department of Social Services (DSS) filed a petition alleging Respondent-Mother and Father[2] were the biological parents of Megan. The petition further alleged Megan—who was approximately five years old—was a neglected juvenile.

On 11 August 2022, the trial court held an adjudication and disposition hearing on the petition alleging Megan's neglect. Respondent-Mother was not present but was represented by counsel. Megan was adjudicated to be a neglected juvenile. At disposition, the trial court established a permanent plan of reunification with the parents.

On 9 September 2022, Respondent-Mother formally entered a case plan with DSS. The trial court held a permanency planning hearing on 27 October 2022; Respondent-Mother was, again, not present but was represented by counsel. During the hearing, the trial court set reunification with a concurrent plan of adoption as the permanent plan for Megan.

The trial court held another permanency planning hearing on 23 February 2023, at which Respondent-Mother was also not present but was represented by appointed counsel. At the hearing, the trial court found Respondent-Mother had not made sufficient progress on her case plan, but the trial court maintained the

---

[2] Father was a named respondent to the juvenile petition filed in this case but is not a party to this appeal.

permanent plan of reunification with a concurrent plan of adoption for Megan. The trial court ordered Respondent-Mother to resume visitation with Megan after she entered into a new visitation agreement with DSS.

On 5 July 2023, Respondent-Mother's appointed counsel moved to withdraw from further representation. The trial court granted the motion on 14 July 2023. The trial court appointed new counsel for Respondent-Mother on 18 July 2023.

On 10 August 2023, the trial court held a permanency planning hearing at which Respondent-Mother was again absent for the hearing but apparently arrived later. Respondent-Mother was, however, represented by counsel. The trial court found Respondent-Mother had not made sufficient progress on her case plan and concluded that Megan's primary permanent plan should be changed to adoption with a concurrent plan of reunification. The trial court ordered a Termination of Parental Rights Filing Status Hearing for 12 October 2023.

The trial court held the status hearing on 12 October 2023. Respondent-Mother was present for this hearing. The same day, DSS filed a Motion to Terminate Respondent-Mother's and Father's Parental Rights.

On 2 November 2023 DSS filed a notice of its decision to terminate Respondent-Mother's and Father's parental rights ("TPR Notice"), pursuant to N.C. Gen. Stat. § 7B-1106.1. The TPR Notice stated, "A written response to the Motion must be filed with the clerk within 30 days after service of the Motion and Notice, or the parental rights of the mother and father may be terminated." The TPR Notice also stated,

"The date, time, and place of the Pre-trial Hearing and Adjudication Hearing is November 29th, 2023 at 9:00 a.m. in the Courtroom at the Stokes County Government Center in Danbury, North Carolina." (emphasis in original).

At the hearing on 29 November 2023, Respondent-Mother's counsel moved to continue the hearing because the 30-day period to which Respondent-Mother was entitled to file a written response had not yet expired. He also explained that he had been unable to contact Respondent-Mother prior to that day. Father joined in the motion to continue, DSS opposed the motion, and the Guardian ad Litem ("GAL") took no formal position on the motion. After a discussion between counsel and the trial court, the trial court denied Respondent-Mother's motion to continue. The trial court held a pre-trial hearing and then proceeded with the adjudication hearing.

At that hearing, the trial court heard testimony from a DSS social worker, and Respondent-Mother testified in her own defense. At the conclusion of the evidence, the trial court concluded DSS had met its burden in establishing that grounds existed for the termination of Respondent-Mother's and Father's parental rights.

The trial court proceeded to the disposition hearing. At the conclusion of this hearing, the trial court concluded terminating Respondent-Mother's and Father's parental rights was in Megan's best interest. The trial court entered its written orders including orders on the pre-trial, adjudication, and disposition hearings on 30 January 2024. Respondent-Mother timely appealed.

**Issue**

The sole issue on appeal is whether the trial court prejudicially erred in denying Respondent-Mother's oral motion for continuance and proceeding on the Motion to Terminate Parental Rights prior to the expiration of the 30 days in which Respondent-Mother may have filed a written response following service of the TPR Notice.

## Analysis

Respondent-Mother contends the trial court erred in denying her motion to continue the termination proceedings where DSS failed to comply with the notice requirements provided by N.C. Gen. Stat. § 7B-1106.1. Specifically, Respondent-Mother argues DSS' failure to comply with those notice requirements deprived her of the statutorily allowed 30-day timeframe to file a written response to the Motion to Terminate Parental Rights where the TPR Notice issued less than 30 days prior to the hearing. Both DSS and the GAL concede the error but argue it was not prejudicial. Indeed, there was error. However, on the facts of this case, the error was not prejudicial.

When, as here, termination of parental rights proceedings are initiated by motion in a pending abuse, neglect, or dependency case, the movant is required to prepare a notice directed to certain listed individuals or entities, including—relevant to this case—the parents of the juvenile. N.C. Gen. Stat. § 7B-1106.1(a) (2023). The Notice is required to contain the following information:

(1) The name of the minor juvenile.

(2) Notice that a written response to the motion must be filed with the clerk within 30 days after service of the motion and notice, or the parent's rights may be terminated.

(3) Notice that any counsel appointed previously and still representing the parent in an abuse, neglect, or dependency proceeding will continue to represent the parents unless otherwise ordered by the court.

(4) Notice that if the parent is indigent, the parent is entitled to appointed counsel and if the parent is not already represented by appointed counsel the parent may contact the clerk immediately to request counsel.

(5) Notice that the date, time, and place of any pretrial hearing pursuant to G.S. 7B-1108.1 and the hearing on the motion will be mailed by the moving party upon filing of the response or 30 days from the date of service if no response is filed.

(6) Notice of the purpose of the hearing and notice that the parents may attend the termination hearing.

N.C. Gen. Stat. § 7B-1106.1(b) (2023).

Of relevance to this case is section 7B-1106.1(b)(5) requiring: "Notice that the date, time, and place of any pretrial hearing pursuant to G.S. 7B 1108.1 and the hearing on the motion will be mailed by the moving party upon filing of the response or 30 days from the date of service if no response is filed." N.C. Gen. Stat. § 7B-1106.1(b)(5) (2023). The implication of this provision appears to be that the movant would be required to subsequently serve a notice of hearing after the filing of a response to the motion to terminate parental rights or upon the expiration of time to do so.

We have previously held when the movant—here, DSS—fails to provide the statutorily required notice, it is necessarily prejudicial error, and a new hearing is required. *In re Alexander*, 158 N.C. App. 522, 526, 581 S.E.2d 466, 469 (2003). There, the department conceded it had failed to prepare the statutorily required notice compliant with N.C. Gen. Stat. § 7B-1106.1(b) (2023). *Id*. at 524, 581 S.E.2d at 468.

On the other hand, we have also held that the failure to timely serve the subsequent notice of hearing identifying the date, time and place of the hearing upon the filing of a response or expiration of time to do so is error, but subject to a harmless error analysis where notice was, in fact, given. *In re T.D.W.*, 203 N.C. App. 539, 545, 692 S.E.2d 177, 181 (2010). In that case, the department mailed the subsequent notice of hearing to the respondent less than 30 days prior to the hearing and well after the time for responding to the motion had expired. *Id*.at 545-6, 692 S.E.2d at 181. Indeed, the respondent did not appear for the hearing. *Id*. Nevertheless, where the respondent—notwithstanding her non-appearance—failed to demonstrate prejudice from the belated service of the subsequent notice of hearing, we determined the late notice was harmless error. *Id*.

In this case, on 12 October 2023, the trial court held a hearing on the status of the filing of the Motion to Terminate Parental Rights, at which both Respondent-Mother and her trial counsel were present. The Motion was filed the same day. However, the TPR Notice failed to issue. Instead, the TPR Notice did not issue until 2 November 2023. The TPR Notice included the information required by section 7B-

1106.1(b) but also included the specific date, time, and place of the hearing. As such, the TPR Notice effectively collapsed the requirements of both notices into the single notice. However, this TPR Notice was both belatedly issued after the filing of the Motion to Terminate Parental Rights to the extent it was the notice required by section 7B-1106.1 and prematurely issued to the extent it was the notice of hearing contemplated by section 7B-1106.1(b)(5) prior to the expiration of time to respond to the Motion to Terminate Parental Rights. Ultimately, the hearing was noticed for and occurred on 29 November 2023. Respondent-Mother and her counsel were both present and Respondent-Mother testified in support of her case.

While this case does not squarely fall under either *Alexander* or *T.D.W.*, ultimately, here, DSS did provide all the elements of both the notice required by section 7B-1106.1 and the subsequent notice of hearing. Respondent-Mother received all the statutory elements of notice to which she was due. DSS' error was in the timing and way it gave that notice. This is unlike *Alexander* where Respondent did not receive the elements of notice and more akin to *T.D.W.* where notice of hearing was given untimely. As such, to the extent there was any error in denying the Motion to Continue based on the untimely notice(s), this Court must determine whether the error resulted in prejudice to Respondent-Mother.

Respondent-Mother's argument primarily rests on the fact she was not afforded a full 30 days following issuance of the TPR Notice to file a responsive pleading. However, while the motion to continue was initially grounded on the basis

additional time was needed so they "could" file a response to the motion, no responsive pleading was proffered. Moreover, while Respondent-Mother also contends she was foreclosed from asserting affirmative defenses, no articulation of those defenses is provided. Respondent-Mother advances no argument as to how the filing of a responsive pleading would have impacted either the process or the outcome of the hearing. Respondent-Mother does not contend the trial court limited her defense of the action or precluded her from offering any evidence in support of her case at the hearing.

Respondent-Mother and her trial counsel were present for the status hearing on 12 October 2023 on the filing of the Motion to Terminate Parental Rights. The Motion was filed the same day. Respondent-Mother does not contend she was not served or did not have actual notice of the filing of the Motion. The hearing occurred on 29 November 2023—48 days after the filing of the Motion. Critically, at no time— either following filing of the Motion or issuance of the later TPR Notice—did Respondent-Mother object to the lack of notice or its contents or move for a continuance of the hearing to permit time for a responsive pleading. Instead, no motion was raised until the morning of the hearing when everyone was present and prepared to proceed.

Moreover, while trial counsel raised the 30-day time to file a response, the oral motion to continue was primarily premised on counsel's inability to contact Respondent-Mother. Counsel conceded, however, Respondent-Mother could have

contacted him. Nevertheless, Respondent-Mother did testify in support of her case. On appeal, Respondent-Mother does not challenge either the adjudication of grounds to terminate her parental rights or the disposition terminating her parental rights.

Thus, Respondent-Mother, on the facts of this case, has failed to demonstrate prejudice from the untimely TPR Notice. *See In re T.D.W.*, 203 N.C. App. at 545-6, 692 S.E.2d at 181. Therefore, any error resulting from the TPR Notice was harmless. Consequently, in turn, the trial court did not commit prejudicial error in denying Respondent-Mother's oral motion to continue.

## Conclusion

Accordingly, for the foregoing reasons, the trial court's Adjudication Order in Proceeding to Terminate Parental Rights and Disposition Order in Proceeding to Terminate Parental Rights are properly affirmed

AFFIRMED.

Judge ARROWOOD concurs. Judge COLLINS dissents by separate opinion.

No. COA24-484 – *In re: M.R.B.*

COLLINS, Judge, dissenting.

Because DSS failed to provide the statutorily required notice and the trial court violated the statutory mandate when it held the TPR hearing before Mother's 30-day time period in which to file a responsive brief expired, I respectfully dissent.

DSS filed a TPR Notice, pursuant to N.C. Gen. Stat. § 7B-1106.1(b), on 2 November 2023. The TPR Notice stated, "A written response to the Motion must be filed with the clerk within 30 days after service of the Motion and Notice, or the parental rights of the mother and father may be terminated." The TPR Notice also stated, "The date, time, and place of the Pre-trial Hearing and Adjudication Hearing is <u>November 29th, 2023 at 9:00 a.m. in the Courtroom at the Stokes County Government Center Danbury, North Carolina</u>." The TPR Notice thus allowed Mother only 27 days to file a written response.

DSS erred in three ways: First, DSS conflated the notice and information required in the first notice by N.C. Gen. Stat. § 7B-1106.1(b) with the notice and information in the second notice required by § 7B-1106.1(b)(5). Second, the information included in the first notice about the "the date, time, and place of any pretrial hearing . . . and the [termination] hearing" should have been included in a second notice sent to Mother after her response was filed or 30 days had passed. However, DSS never sent a second notice. Third, the date of the termination hearing set forth in the singular notice sent violated § 7B-1106.1's mandate that Mother have 30 days to respond to the TPR motion.

I disagree with the majority opinion's conclusion that this case is more similar to *In re T.D.W.* than *In re Alexander*. This case is more similar to *Alexander* because there was a "total failure" to provide the second notice *and* "a failure to provide important components" of the second notice–specifically, a hearing date that complied with the mandatory provisions of the statute–in the singular notice that was sent. *In re T.D.W.*, 203 N.C. App. at 544. Thus, the issue here was not merely that DSS's notice was untimely, but also that it failed to include some of the required elements of notice. Accordingly, DSS's failure to comply with N.C. Gen. Stat. § 7B-1106.1 cannot "be excused on the grounds that the parent who did not receive the required notice was not prejudiced." *Id.*

Moreover, even when applying a harmless error analysis in this case, the prejudice to Mother here is self-evident: Mother received *at least* three fewer days to meet with her attorney and prepare her response and defense, time to which she was statutorily entitled. This obvious prejudice can be seen in all types of hypothetical situations. Take, for example, an attorney for an appellant in this Court who shows up to Court three days before their response brief is due for the purpose of moving for an extension of time to file the brief. Not only is the extension denied, but the attorney is required to participate in oral argument on the spot, having not yet met with their client and not filed a brief. I think it would be difficult to find any appellate attorney who would not think this prejudicial on its face.

Here, had DSS sent a proper first notice, Mother would have had 30 days in

which to file her response, and DSS would have had to wait for Mother's response before setting a date, time, and place for the TPR hearing and sending out a second notice containing that information. Furthermore, Mother had to participate in a TPR hearing for which she was not prepared. Mother's attorney made a motion to continue, explaining to the trial court that the time for Mother's response had not yet expired and that they "need[ed] a continuance . . . so that [they] could file a response." Mother's attorney informed the trial court at the hearing on the motion to continue that he had not been in contact with her before that date as her phone had stopped working, he had not "been able to file anything up until this point," and that Mother "hasn't really had a chance to work with me on this . . . ." This evidence amply supports that Mother was prejudiced by DSS's failure to provide the statutorily required notice.

Further, the trial court violated the statutory mandate in N.C. Gen. Stat. § 7B-1106.1(a), (b)(2), and (b)(5) when it held the TPR hearing 27 days after the TPR Notice was filed, depriving Mother of the full 30-day time period in which to file her response. N.C. Gen. Stat. § 7B-1106.1(a) provides that DSS "shall prepare a notice" directed to Mother and that the notice "shall notify the person . . . to whom it is directed to file a written response within 30 days after service of the motion." N.C. Gen. Stat. § 7B-1106.1(a). N.C. Gen. Stat. § 7B-1106.1(b) provides that the notice required by subsection (a) "shall" include, *inter alia*, the following: notice "must be filed with the clerk within 30 days after service of the motion and notice," N.C. Gen.

Stat. § 7B-1106.1(b)(2), and notice "will be mailed by the moving party upon filing of the response or 30 days from the date of service if no response is filed." N.C. Gen. Stat. § 7B-1106.1(b)(5). "This Court has held the General Assembly's use of the word 'shall' establishes a mandate, and failure to comply with the statutory mandate is reversible error." *In re Alexander*, 159 N.C. App. at 525. Moreover, "[a] trial court may also abuse its discretion if it . . . fails to comply with a statutory mandate." *In re B.E.*, 375 N.C. 730, 745 (2020) (citations omitted).

DSS argues that Mother and her attorney *could* have prepared in the days leading up to the hearing. The point is, Mother did not have to. Three different subsections of N.C. Gen. Stat. § 7B-1106.1 mandate that a parent be given 30 days to respond to a motion to terminate their parental rights. *See* N.C. Gen. Stat. § 7B-1106.1(a), (b)(2), and (b)(5). Mother was entitled to rely upon the 30 days afforded to her by statute. The trial court thus abused its discretion when it denied Mother's motion to continue and failed to follow the mandate set forth in N.C. Gen. Stat. § 7B-1106.1. It further erred by finding that "all . . . notice requirements have been met" and that "[t]he time for the mother to file a responsive pleading has not yet expired, however, the mother is present in Court today and is not prejudiced by her failure to file a responsive pleading as of today's hearing." N.C. Gen. Stat. § 7B-1106.1 does not permit the trial court to truncate Mother's 30-day time period in which to file a response.

4